**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

TINA CHALMERS, individually and as the
executor *de son tort* of the Estate of RICHARD
CHALMERS, deceased,

CASE NO.:

Plaintiff,

-v-

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

COMES NOW the Plaintiff, TINA CHALMERS, individually and as the executor *de son tort* of the Estate of RICHARD CHALMERS, deceased, by and through her undersigned attorneys, and sues Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter "CARNIVAL") and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, TINA CHALMERS ("Plaintiff" or "Ms. Chalmers"), is a resident of Jacksonville, Duval County, Florida.  Decedent-Plaintiff, RICHARD CHALMERS ("Decedent" or "Mr. CHALMERS") was a resident of Jacksonville, Duval County, Florida.

2.      Defendant, CARNIVAL CRUISELINE ("Defendant" or "Carnival," is a corporation organized under the laws of Panama with its principal place of business in the State of Florida, at 3655 N.W. 87th Avenue, Miami, FL 33718, in Miami-Dade County, Florida.

3.     At all relevant times, SABRISH SIVAKUMAR, MD ("Dr. SIVAKUMAR"), PREMA SAGRAN, MD ("Dr. SAGRAN"), SAMPATH SASIKALA, RN ("RN SASIKALA"), and ROSEL SOLIDUM URSUA, RN ("RN URSUA") were employees of CARNIVAL and were acting within the scope of their employment.

4.     Alternatively, during the time care was provided to Mr. CHALMERS, Dr. SIVAKUMAR, Dr. SAGRAN, RN SASIKALA, and RN URSUA were acting within the scope of their actual and/or apparent agency relationship with CARNIVAL.  CARNIVAL, as principal, presented Dr. SIVAKUMAR, Dr. SAGRAN, RN SASIKALA, and RN URSUA, as its agents and arranged them to provide medical care and treatment to CARNIVAL guests, including Mr. CHALMERS.  Dr. SIVAKUMAR, Dr. SAGRAN, RN SASIKALA, and RN URSUA were specifically assigned to provide medical care and treatment Mr. CHALMERS.

5.     This Court has jurisdiction over this action pursuant to the Death on the High Seas Act (DOHSA), 46 U.S.C.A. § 30302, which grants federal courts jurisdiction over deaths occurring beyond three nautical miles from the shore of the United States.  Additionally, it has been stipulated in accordance with the terms and conditions outlined in Defendant CARNIVAL's Ticket Contract, specifically Section 14(c), that the United States District Court for the Southern District of Florida in Miami has the exclusive forum for resolving disputes.[1]

6.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred within this District.

---

[1] Ticket Contract, §14(c), available at https://www.carnival.com/about-carnival/legal-notice/ticket-contract (last visited Aug. 5, 2024).  According to Carnival's Terms and Conditions of the Ticket Contract, Section 14(c), it is agreed that all disputes and matters arising under, in connection with, or incident to the contract or the guest's cruise shall be litigated before the United States District Court for the Southern District of Florida in Miami.

## FACTS GIVING RISE TO CAUSE OF ACTION

7.      On August 3, 2023, Mr. RICHARD CHALMERS and his wife, Ms. TINA CHALMERS embarked on a four-day cruise to the Bahamas aboard the ship, Carnival Elation, controlled and operated by the Defendant CARNIVAL.

8.      On August 5, 2023, Mr. CHALMERS, a 66-year-old male, sustained injuries after being ejected from a mobility scooter and falling down a flight of stairs during an excursion to a hotel casino in Bimini, Bahamas.

9.      Upon returning to the cruise ship, Mr. CHALMERS sought medical attention at approximately 2:20 p.m., reporting right-sided chest pain extending from under the axilla and down the chest, as well as a knee abrasion.  He was attended by RN SASIKALA and Dr. SIVAKUMAR.

10.     A chest x-ray revealed the presence of a pacemaker, moderate cardiomegaly, and sternal wires indicative of a history of open-heart surgery.  Mr. CHALMERS was diagnosed with a right fifth rib fracture and was initially discharged into the care of his wife, Ms. CHALMERS, by Dr. SIVAKUMAR despite the severity of his injuries.

11.     Later that night, Mr. CHALMERS returned to the ship's medical center with worsening chest pain, dyspnea, and increased pain with movement.  He was readmitted by RN URSUA until the ship reached its final destination.  During this period, his oxygen saturation declined, and his pain became difficult to manage despite Fentanyl infusion by Dr. SIVAKUMAR.  An EKG performed by Dr. SIVAKUMAR showed abnormal results including a right bundle branch block with occasional ventricular premature contractions.

12. Blood tests for prothrombin time (PT) and International Normalized Ration (INR) were conducted by RN URSUA and RN SASIKALA under the orders of Dr. SIVAKUMAR, although these are not suitable for patients on Xarelto, as they are validated only for vitamin K antagonists like Coumadin.  This indicated a lack of appropriate knowledge and testing for a patient on Xarelto.

13. On August 6, 2023, Dr. SAGRAN issued a medical referral for surgical intervention due to the severity of Mr. CHALMER's condition; however, neither Dr. SAGRAN nor the nursing staff, including RN SASIKALA and RN URSUA made attempts to transfer Mr. CHALMERS to a medical facility capable of providing the necessary surgical care, which constitutes a failure to act on a critical medical decision.

14. On August 7, 2023, Mr. CHALMERS disembarked without escort.  There was a substantial delay in getting him off the boat as CARNIVAL made no prearranged plans to have him transported to a local hospital.  Dr. SAGRAN, Dr. SIVAKUMARH, RN SAMPATH, and RN URSUA collectively failed to ensure proper transfer and follow-up care.  Mr. CHALMERS was forced to call 911 and was subsequently transported to UF Health North by the Jacksonville Fire Department.

15. Upon arrival at UF Health North, Mr. CHALMERS presented with hypoxemia and complained of chest pain and dyspnea.  Imaging confirmed seven rib fractures, including one displaced rib, and a hemothorax.  He was transferred to the Trauma Center, where a chest tube was inserted, draining dark red blood.  He subsequently began coughing up blood and suffered cardiac

arrest.    Despite emergency interventions, resuscitation efforts were unsuccessful, and Mr. CHALMERS was pronounced deceased.

**COUNT I: NEGLIGENCE RESULTING IN WRONGFUL DEATH**

16.    The Plaintiff realleges and incorporates by reference each of the factual allegations against each Defendant.

17.    At all times material, hereto, there existed a provider-patient relationship between the medical staff of CARNIVAL and Mr. CHALMERS.

18.    By virtue of the provider-patient relationship, Defendant, CARNIVAL, through its employees and agents, owed a duty of care to RICHARD CHALMERS to provide reasonable and appropriate medical care under the circumstances.

19.    Defendant was negligent and breached the prevailing professional standard of care with regards to the care and treatment provide to Ms. CHALMERS, in the following respects:

a.    failing to appropriately triage a trauma patient with blunt chest trauma on blood thinners;

b.    failing to recommend that Mr. CHALMERS seek local medical care in Bimini;

c.    failing to escalate medical care to a higher level for a chest trauma patient;

d.    failing to provide adequate monitoring and testing;

e.    failing to accurately interpret imaging (x-rays) aboard the cruise ship;

f.    failing to follow recommended standards for trauma assessment and interventions;

g.      failing to ensure follow-up on surgical referral, inadequate coordination for transfer to a medical facility;

h.      failing to arrange for immediate medical transport of Mr. CHALMERS from the ship to an appropriate medical facility; and/or

i.      failing to have adequate and updated x-ray technology aboard.

20.     As a direct and/or proximate cause of the negligence of Defendant, RICHARD CHALMERS, suffered fatal injuries.

21.     Plaintiff, as the surviving spouse and executor de son tort of RICHARD CHALMERS, seeks recovery for the following damages as available under DOHSA:

a.      pecuniary loss sustained by the decedent's beneficiaries;

b.      loss of support, services, and inheritance;

c.      funeral and burial expenses; and/or

d.      medical expenses incurred prior to death.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages and costs, and such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable as of right.

RESPECTFULLY SUBMITTED this 5th day of August 2024.

*/s/ Kevin Butler*
**Kevin Butler, Esq.**
Florida Bar No. 119088
**Jack T. Cook, Esq.**

Florida Bar No. 0088589
**Amira A. Cheikh-Khalil, Esq.**
Florida Bar No. 1052419
Morgan & Morgan, P.A.
20 N. Orange Avenue, Suite 1600,
Orlando, Florida 32801
p. 407-236-8161
f. 407-204-2194
**Primary Email:**
kbutler@forthepeople.com
jcook@forthepeople.com
amira@forthepeople.com
**Secondary Email:**
aheintz@forthepeople.com
eadames@forthepeople.com
*Attorney for Plaintiff*